IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JANE DOE, as parent and next friend of J.A., a minor child, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 24-cv-414-MTS |
| (1) INDEPENDENT SCHOOL DISTRICT NO. 1 OF TULSA COUNTY, a/k/a TULSA PUBLIC SCHOOLS, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

### DEFENDANT DR. EBONY JOHNSON'S
### MOTION TO DISMISS AND BRIEF IN SUPPORT

**October 30, 2024**

Mark S. Rains, OBA No. 10935
Lindsey E. Albers, OBA No. 19394
Morgan L. Medders, OBA No. 39971
**ROSENSTEIN, FIST & RINGOLD**
525 South Main, Suite 700
Tulsa, Oklahoma 74103
(918) 585-9211 – Telephone
(918) 583-5617 – Facsimile
mrains@rfrlaw.com
lalbers@rfrlaw.com
mmedders@rfrlaw.com

**ATTORNEYS FOR
DEFENDANT DR. EBONY JOHNSON**

Pursuant to FED. R. CIV. P. 12(b)(6), Defendant, Dr. Ebony Johnson, respectfully submits this Motion to Dismiss and Brief in Support, as Plaintiff has failed to state a claim against her.

<u>SUMMARY OF RELEVANT ALLEGATIONS</u>

On February 1, 2024, J.A. was a student at Will Rogers High School (the "School"). J.A. alleges that on that date, she was picked up from the School parking lot by Defendant Nadir Balan ("Balan"), who was a former student and 20-year-old volunteer for the track team at the School. J.A. alleges that Balan picked her up from School, drove her off campus to a nearby park, and had sex with her. Because J.A. was 16 years old at the time and Balan was 20 years old, this was considered statutory rape. J.A. alleges that after she returned to the School, Defendant Balan was terminated as a coach. As a result of this incident, J.A. filed this lawsuit on September 9, 2024. [Dkt. #2]. J.A. alleges that Defendants Independent School District No. 1 of Tulsa County ("TPS"), Dr. Ebony Johnson, Cindy Largent, and Scott Childers: (1) violated Title IX by creating and subjecting J.A. to a hostile educational environment; (2) violated J.A.'s Fourteenth Amendment Due Process Equal Protection Rights by denying her access to an educational environment free of harassment and discrimination; and, (3) violated J.A.'s Fourteenth Amendment Due Process Rights by depriving her of a safe learning environment. J.A. has alleged additional claims against Defendant Balan. Because Plaintiff failed to state a claim under Title IX or Section 1983 against Defendant Johnson, Plaintiff's claims against Defendant Johnson should be dismissed with prejudice.

<u>ARGUMENT AND AUTHORITIES</u>

**The Legal Standard for a 12(b)(6) Motion to Dismiss**

A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell v. Atlantic*

1

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). In considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the complaint "must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

For a complaint to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940 (2009). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support of these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 439 F.3d 1174, 1177 (10th Cir. 1991). Furthermore, a plaintiff's factual allegations "must raise a right to relief above the speculative level." *McDonald v. Wise*, 769 F.3d 1202, 1210 (10th Cir. 2014) (citation omitted). In other words, it is Plaintiff's duty to furnish factual "allegations plausibly suggesting (*not merely consistent with*)" an entitlement to relief. *Id.* (emphasis added).

The Court need not credit naked assertions or legal conclusions. *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1303 (10th Cir. 2021). As one District Court in the Tenth Circuit stated: "[l]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Parker v. Stryker Corp.*, 584 F. Supp. 2d 1298, 1299 (D. Colo. 2008). A "[p]laintiff's obligation to provide the 'grounds' of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S.

2

at 555-6). Here, the Plaintiff has pleaded mere legal conclusions without factual contentions that would entitle her to relief. As a result, dismissal is proper.

### I. Plaintiff's Title IX Claim against Defendant Johnson Should be Dismissed.

It is well-settled that Title IX's implied remedy for damages is available <u>only</u> against an educational institution that is a funding recipient and may not be asserted against a school official in his or her individual capacity. In *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), the United States Supreme Court held that a plaintiff who alleges that he or she has been discriminated against on the basis of sex may bring claims under Title IX and 42 U.S.C. § 1983. *Id.* at 258. In reaching this conclusion, the Court compared the relief available under Title IX and § 1983. The Court observed that, unlike § 1983, which authorizes suit to be brought against individuals as well as governmental entities, Title IX "has been consistently interpreted as not authorizing suit against school officials, teachers, and other individuals." *Id.* at 257.

The Supreme Court's analysis of the plaintiff's Title IX claim in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (U.S. 1999), makes clear that Title IX liability may be imposed only against a funding recipient. In *Davis*, the Court noted that it has repeatedly treated Title IX "as legislation enacted pursuant to Congress' authority under the Spending Clause," explaining that "[w]hen Congress acts pursuant to its spending power, it generates legislation 'much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.'" *Id.* at 670. The Court agreed with the school district's argument that, because Title IX is Spending Clause legislation, liability under Title IX could be imposed only on funding recipients and not on third parties:

> We agree with respondents that a recipient of federal funds may be liable in damages under Title IX only for its own misconduct. The recipient itself must "exclud[e] [persons] from participation in, ... den[y] [persons] the benefits of, or ... subjec[t] [persons] to discrimination under" its "program[s] or activit[ies]" in order

3

>to be liable under Title IX. The Government's enforcement power may **only be exercised against the funding recipient**, *see* § 1682, and we have not extended damages liability under Title IX to parties outside the scope of this power. *See National Collegiate Athletic Assn. v. Smith*, 525 U.S. 459, 467, n.5 (1999) (rejecting suggestion "that the private right of action available under ... § 1681(a) is potentially broader than the Government's enforcement authority.

*Davis*, 526 U.S. at 640-41 (emphasis added).

The United States District Court for the District of New Mexico cited the Supreme Court's decision in *Fitzgerald* (as well as numerous other authorities) in concluding that "Title IX does not authorize a cause of action against individuals." *Schaefer v. Las Cruces Public School District*, 716 F.Supp.2d 1052, 1068 (D. N.M. 2010). The court held that Title IX "creates a right enforceable against educational institutions only." *Id.*

The United States District Court for the District of Kansas has also held that Title IX does not authorize suits against individual school employees. In *C.R.K. v. U.S.D. 260*, 176 F. Supp. 2d 1145 (D. Kan. 2001), the court stated that "the law is now clearly established that only Title IX grant recipients can be held liable for an alleged violation of Title IX and that individual employees of the grant recipient are not personally liable for the violation." *Id.* at 1167.

Because federal courts have consistently interpreted Title IX as establishing a right to relief against educational institutions only and not against individual school officials or employees, the Plaintiff's Title IX claims against Defendant Johnson in her individual capacity should be dismissed for failure to state a claim upon which relief can be granted.

### II. Plaintiff's 42 U.S.C. § 1983 Claim against Defendant Johnson Should be Dismissed.

#### A. Plaintiff has not established a Constitutional Violation.

Plaintiff cannot establish a claim against Defendant Johnson for violation of 42 U.S.C. § 1983 ("Section 1983") without first establishing a constitutional violation. Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

"As a threshold inquiry to qualified immunity, we first must determine whether plaintiff's allegations, even if accepted as true, state a claim for violation of any rights secured under the United States Constitution." *Maldonado v. Josey*, 975 F.2d 727, 729 (10th Cir. 1992), *cert. denied*, 507 U.S. 914, 113 S. Ct. 1266 (1993). Plaintiff has the "burden to show with particularity facts and law establishing the inference that defendant violated a constitutional right." *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). The Court will not even reach the issue of a defendant's qualified immunity if plaintiff's claim is not actionable. *See Gehl Group v. Koby*, 63 F.3d 1528, 1533 (10th Cir. 1995). Here, Plaintiff has failed to state a constitutional violation.

#### B. Plaintiff Failed to State a Claim for an Underlying Constitutional Violation in Support of her Section 1983 Claim for Violation of Equal Protection.

Generally, "an equal protection violation occurs when the government treats someone differently than another who is similarly situated." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). Equal protection "does not forbid classifications[,]" but "[i]t simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see also Storie v. Independent Sch. Dist., #13*,

834 F. Supp. 2d 1305, 1309 (E.D. Okla. 2011) ("[T]he Constitution's Equal Protection clause is implicated 'when the state treats two groups, or individuals, differently.'"), quoting *KT & G Corp. v. Attorney General of State of Okla.,* 535 F.3d 1114, 1136 (10th Cir. 2008).

Here, it appears that Plaintiff is asserting an equal protection claim on a "class of one" theory. *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). To succeed on such a claim, the Tenth Circuit Court of Appeals requires that: (1) a plaintiff establish that she was intentionally treated differently from those similarly situated, *see Grubbs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006), and (2) "the official action was objectively irrational and abusive[.]" *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1211 (10th Cir. 2006). The Tenth Circuit has noted that a "multiplicity of relevant (nondiscriminatory) variables requires plaintiff to provide compelling evidence of other similarly situated persons who were in fact treated differently." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1215 (10th Cir. 2004). Moreover, the plaintiff must "allege some level of animosity or ill will." *Storie*, 834 F. Supp. 2d at 1309-10 (citing *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005)).

Here, Plaintiff's claim that Defendant Johnson violated Plaintiff's equal protection rights fails. Plaintiff makes no factual allegations demonstrating that J.A. was treated differently from other similarly situated students. The Complaint is devoid of any evidence of the characteristics of other similarly situated students and how they were treated differently than J.A. in the context of the allegations. In fact, the Plaintiff's allegations actually suggest that all students were being treated the same. In any event, Plaintiff has failed to provide "compelling evidence of other similarly situated persons who were in fact treated differently[,]" and her equal protection claim should be dismissed on this basis. *See Jennings*, 383 F.3d at 1215.

6

Plaintiff claims that Defendant Johnson violated Plaintiff's Fourteenth Amendment right to equal protection by failing to investigate Defendant Balan's misconduct [Dkt. #2, pp. 15-16]. A school district employee "may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment." *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1250 (10th Cir. 1999). The deliberate indifference must amount to "a supervisor or employer [who] participates in or consciously acquiesces in sexual harassment by a ... third party." *Murell*, 186 F.3d at 1250 (quoting *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994)) (internal quotations omitted). There are no actions by Defendant Johnson that amount to deliberate indifference to known sexual harassment. Thus, Defendant Johnson's actions in this case do not amount to a violation of the Plaintiff's equal protection rights.

### C. Plaintiff Failed to State an Underlying Constitutional Violation in Support of her Section 1983 Claim for Violation of Due Process.

Plaintiff asserts that Defendant Johnson violated her Fourteenth Amendment Right to due process [Dkt. #2, p. 17]. The Fourteenth Amendment provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. Here, the Plaintiff seems to seek relief based on a purported violation of Plaintiff's substantive due process rights to be reasonably safe from harm as guaranteed by the Fourteenth Amendment [Dkt. #2, pp. 17-18]. In *Miller v. City of Philadelphia*, 174 F.3d 368, 374-75 (3rd Cir. 1999), the Third Circuit aptly summarized substantive due process violations as follows:

> "The touchstone of due process is the protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974). In cases like this, where abusive action by a member of the executive branch is alleged, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998) (citation and internal quotation marks omitted). To generate liability, executive action must be so ill-conceived or malicious that it "shocks the conscience." *Id.* at 1717 (*citing, inter alia, Rochin v. California*, 342 U.S. 165, 172-73, 72 S.Ct. 205, 209-10, 96 L.Ed.

7

> 183 (1952)). Critically, under this standard, officials will not be held liable for actions that are merely negligent.

(Citations in original). In *Gilliam v. USD No. 244 School Dist.*, 397 F. Supp. 2d 1282, 1287 (D. Kan. 2005), the district court explained:

> The standard for judging a substantive due process claim is whether the challenged government action would shock the conscience of federal judges. To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Instead, *a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.* A substantive due process violation must be something more than an ordinary tort to be actionable under § 1983. In this case, plaintiff has failed to allege conduct which rises above and beyond that of an ordinary tort claim such that it meets the heightened "shocks the conscience" standard applicable to substantive due process claims.

(Internal citation and punctuation omitted; emphasis added). In *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998), the Court noted that "[s]ubstantive due process claims are not based on state law but are founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." (Cleaned up). Again, the ultimate standard for determining whether there has been a substantive due process violation is "whether the challenged government action shocks the conscience of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002) (cleaned up); *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006).

Additionally, mere negligence is insufficient to shock the conscience and give rise to a substantive due process violation. In *Brown v. Commonwealth of Pennsylvania, Dept. of Health Emergency Medical Services Training Institute*, 318 F.3d 473, 477-78 (3rd Cir. 2003), the Third Circuit stated, as follows, that the due process clause does not turn alleged acts of negligence into federal torts:

> The Supreme Court has repeatedly stated that "the Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation." Although state tort law might provide a remedy for

8

a state's negligent rescue attempt, it neither logically nor legally follows that federal constitutional law must do the same. *See Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("Section 1983 is not a source of substantive rights and does not provide redress for common law torts - the plaintiff must allege a violation of a federal right.")(internal citations omitted).

The Fourteenth Amendment does not require that a school district or its administrators absolutely guarantee the safety of students at school, especially from violence inflicted by third parties. *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195, 109 S. Ct. 998, 1003 (1989); *Seamons v. Snow*, 84 F.3d 1226, 1235 (10th Cir. 1996).

The United States Supreme Court, in *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 195-197 (1989), explained:

> .... nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text...

The Tenth Circuit, citing with approval the analysis from *DeShaney,* in *Sutton v. Utah State School for the Deaf and Blind*, 173 F3d 1226 (10th Cir. 1999) determined:

> It is well settled that a state does not have a constitutional duty to protect its citizens from private violence. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195-197 (1989) (noting that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors," and holding that "a State's failure to protect an individual against private violence ... does not constitute a violation of the Due Process Clause"). Rather, state actors are generally liable under the Due Process Clause only for their own acts. *Id.*

Moreover, in *Liebson v. New Mexico Corrections Dept.*, 73 F.3d 274, 276 (10th Cir. 1996), the Tenth Circuit echoed the holding from *DeShaney* regarding liability for the violent acts of third parties, and in doing so, stated two recognized exceptions:

> The first exception, known as the special relationship doctrine, "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual...." The second exception, sometimes referred to as the "danger creation" theory, provides that a state may also be liable for an individual's safety "if it created the danger that harmed the individual...."

Neither of these exceptions is present in this case.

Regarding the first exception noted in *Liebson*, special relationship, the Court in *Armijo By and Through Chavez v. Wagon Mound Public Schools*, 159 F.3d 1253, 1261 (10th Cir. 1998), stated that "a plaintiff must show involuntary restraint by the government official in order to establish a duty to protect under the special relationship theory." In *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1234 (10th Cir. 2000), the Court stated that no special relationship exists where the parents are still the primary caregivers: "Where the parents are still the primary care givers for the child there is no special relationship and no due process violation." Here, Plaintiff is in the custody of her parents. Thus, no special relationship exists.

As to the second exception, danger creation, the Court in *Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1237 (10th Cir. 1999), explained that in order for a plaintiff to prevail, the state actor must have allegedly undertaken an action to create the danger:

> it is not enough to show that the state increased the danger of harm from third persons; the § 1983 plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff. That is, plaintiff-appellant's claim must be predicated on reckless or intentionally injury-causing state action which "shocks the conscience" of federal judges. Further, this "danger creation" doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger. (Internal citations and punctuation omitted).

Here, Plaintiff does not allege any act by Defendant Johnson that placed Plaintiff in danger. Plaintiff has not alleged that Defendant Johnson intentionally or recklessly caused Plaintiff an injury that would shock the conscious of the Court. Whether conduct shocks the conscience is a question of law for the Court. *See, e.g., Kerns v. Indep. Sch. Dist. No. 31 of Ottawa Cty.*, 984 F.

Supp. 2d 1144, 1151 (N.D. Okla. 2013) (collecting cases). Liability under the Due Process Clause may not be based on negligent action by a defendant. *See County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1718 (1998)("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *DeShaney*, 489 U.S. at 202 (the Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation"). As the Supreme Court once described it, "obduracy and wantonness" violate the Constitution--not "inadvertence or error in good faith[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Furthermore, in order to establish deliberate indifference, plaintiffs generally "must show that the defendant was adequately put on notice of prior misbehavior." *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir. 1979).

In this case, Plaintiff asserts that Defendant Johnson failed to prohibit Defendant Balan's "continued sex discrimination, harassment, and abuse." [Dkt. #2, p. 18]. However, constitutional claims cannot subsist on allegations that merely show the government official had authority over subordinates who allegedly committed constitutional violations. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996); *see also Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (mere "supervisory status" cannot create personal liability). That is, no one individual can be vicariously liable for a constitutional violation premised solely on another's conduct. *See Iqbal*, 556 U.S. at 676.

When a plaintiff seeks to hold an individual constitutionally liable in their capacity as a supervisor -- such as the superintendent of a school district -- rigorous standards apply; standards which seek to ensure a supervisor is not being subjected to *de facto* vicarious liability for his subordinates' conduct. *See, e.g., Christmas v. Harris County*, 51 F.4th 1348, 1356 (11th Cir. 2022) ("the standard by which a supervisor is held liable in her individual capacity for the actions of a

11

subordinate is extremely rigorous.") (citation omitted). For Plaintiff to proceed on a supervisory liability claim, she must plead facts sufficient to show an affirmative link between the alleged violation and Defendant Johnson's actions. *See Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014). The conduct must be directed at the plaintiff and must "impose an immediate threat of harm, which by its nature has a limited range and duration." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). If a plaintiff fails to set forth those key factual allegations, then the complaint is ripe for a 12(b)(6) dismissal. *Ruiz*, 299 F.3d at 1183; *Snow,* 84 F.3d at 1236 (motion to dismiss substantive due process violations affirmed).

The Plaintiff's Complaint contains no language or even a description of actions tending to establish that Superintendent Johnson harbored any deliberate indifference or conduct that "shocks the court's conscience." Indeed, the Plaintiff's claims, if proven, sound exclusively in negligence. That is, Plaintiff has alleged Defendant Johnson failed to investigate and educate Defendant Balan on what constitutes sexual misconduct [Dkt. #2, p. 18]. If shown, the failure to train, supervise, and discipline sounds in negligence. As such, these allegations are insufficient on their face.

**D.  Defendant Johnson is Entitled to Qualified Immunity.**

Even assuming the Court finds that the Plaintiff has sufficiently stated a violation of her substantive due process rights, dismissal of Plaintiff's 42 U.S.C. § 1983 claim is proper as Defendant Johnson is entitled to qualified immunity on such a claim.

Here, Plaintiff brought suit against Defendant Johnson, as the Superintendent of TPS. "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir.2003) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985)) (internal quotation marks omitted). Qualified immunity represents the "best attainable accommodation of competing values," namely, the need to allow plaintiffs

vindication for constitutional violations by government officials and the need to preclude costly and time-consuming litigation of meritless issues. *Harlow v. Fitzgerald*, 457 U.S. 800, 813–14, 102 S. Ct. 2727 (1982). "Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (citations omitted). It provides "a right not to stand trial in the first place." *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1108 (10th Cir. 2008) (citation omitted).

A court begins with the assumption that qualified immunity applies as to the public official. *Medina*, 252 F.3d at 1130. To overcome this presumption, a plaintiff must make a two-part showing: (1) that the defendant violated a plaintiff's constitutional or statutory rights and (2) that the infringed right was clearly established at the time of the allegedly unlawful activity such that a reasonable public official would have known that their challenged conduct was illegal. *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) (citations omitted). The Tenth Circuit has repeatedly characterized this burden as heavy. *Id.* at 1294-95. Because qualified immunity protects "all but the plainly incompetent or those who knowingly violated the law," public officials are "entitled to qualified immunity 'in all but the most exceptional cases.'" *Rachamim v. Ortiz*, 147 F. App'x 731, 734 (10th Cir. 2005) (quotations omitted).

Plaintiff failed to identify any specific allegations of conduct by Defendant Johnson that identifies a violation of a constitutional or statutory right. Plaintiff only provides conclusory allegations against Defendant Johnson, and that Johnson (along with other Defendants) was "deliberately indifferent" or "creat[ed] a dangerous environment," without identifying any specific conduct [Dkt. #2, pp. 18-19]. As further discussed herein, Defendant Johnson did not commit any constitutional violations and is entitled to qualified immunity.

13

### III. Plaintiff's Section 1983 Constitutional Claims Against Johnson Should be Dismissed Because They are Duplicative of her Claims Against TPS.

The Tenth Circuit has recognized that an action against a government officer in their official capacity is simply "another way of pleading an action against an entity of which an officer is an agent." *Johnson v. Bd. of Cnty. Comm'rs*, 85 F.3d 489, 493 (10th Cir. 1996) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Because a suit against a governmental entity and a suit against a governmental official in their official capacity are "the same," a plaintiff seeking to recover damages in an official capacity suit "must look to the governmental entity alone for payment." *Marino v. Mayger*, 118 Fed. App'x 393, 405 (10th Cir. 2004) (citing *Graham*, 473 U.S. at 166). "Thus, a person sued in his official capacity has no stake, as an individual, in the outcome of this litigation." *Johnson*, 85 F.3d at 493 (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543-544 (1986)).

Because a claim against a government officer in her official capacity is the same as a claim against the governmental entity itself, federal courts within the Tenth Circuit have routinely dismissed official capacity claims in which the governmental entity is also named as a defendant. In *Moore v. City of Tulsa*, 55 F. Supp. 3d 1337 (N.D. Okla. 2014), this Court dismissed the plaintiff's official capacity claims against a fire department chief as duplicative of the claims against the City of Tulsa, noting that "if a governmental entity is already a defendant in a lawsuit, then any official capacity claims against its employees are redundant and may be dismissed." *Id.* at 1349 (citing *Griffin v. Indep. Sch. Dist. No. 1 of Tulsa Cnty., Okla.*, No. 13-CV-702-CVE-FHM, 2013 WL 6048988, at *3 (N.D. Okla. Nov. 14, 2013)) (alterations in original omitted).

In *Busby v. City of Tulsa*, No. 11-cv-447-GKF-PJC, 2012 WL 1867167 (N.D. Okla. May 22, 2012), the Northern District of Oklahoma again dismissed official capacity claims and noted that "a number of courts have dismissed individuals sued in their official capacities where the

14

entity whose policies are at issue is also a defendant." *Id.* at *5 (collecting cases). In *Storie v. Indep. Sch. Dist. No. 13, Pushmataha Cnty., Okla.*, 834 F. Supp. 2d 1305 (E.D. Okla. 2011), the Eastern District Court dismissed the plaintiff's official capacity claims against a middle school principal as redundant because the same claims were brought against the school district. *Id.* at 1307-08.

In *Stout v. United States ex rel. United States Marshal's Service*, No. 13-cv-753-WJ-GBW, 2013 WL 5954780 (W.D. Okla. Nov. 4, 2013), the Western District of Oklahoma dismissed the plaintiffs' official capacity claims against a police officer, discussing how an action pursuant to Section 1983 "appropriately is pleaded against a municipality *either* by naming the municipality itself *or* by naming a municipal officer in his or her official capacity." *Id.* at *2 (citations omitted) (emphasis in original).

Here, Plaintiff asserts claims against Defendant Johnson under Section 1983 based on the policies and procedures of TPS [Dkt. #2, pp. 14-21]. However, all of Plaintiff's allegations against Defendant Johnson are related to Johnson's official duties as Superintendent of TPS. More specifically, Plaintiff asserts that Defendant Johnson's failure to train, educate, supervise, and discipline her subordinates caused violations of Plaintiff's rights [Dkt. #2, pp. 16-17]. Plaintiff's acknowledges that all actions taken by Defendant Johnson were in her official capacity as Superintendent of TPS. Thus, the Section 1983 claims against Defendant Johnson should be dismissed as duplicative and redundant pursuant to Fed. R. Civ. P. 12(f).

### IV.    Preservation of All Other Defenses Under Oklahoma and Federal Law

Defendant Johnson hereby asserts and preserves all other defenses that may be available under Oklahoma law pursuant to Fed. R. Civ. P. 12 and Oklahoma substantive law.

## **CONCLUSION**

WHEREFORE, based on the arguments and authorities set forth above, Defendant Johnson respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice as to all claims, permit Defendant to recover her attorneys' fees and costs, and for such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Mark S. Rains*
Mark S. Rains, OBA No. 10935
Lindsey E. Albers, OBA No. 19394
Morgan L. Medders, OBA No. 39971
**ROSENSTEIN, FIST & RINGOLD**
525 South Main, Suite 700
Tulsa, Oklahoma 74103
(918) 585-9211 – Telephone
(918) 583-5617 – Facsimile
mrains@rfrlaw.com
lalbers@rfrlaw.com
mmedders@rfrlaw.com

**ATTORNEYS FOR**
**DEFENDANT DR. EBONY JOHNSON**

## **CERTIFICATE OF SERVICE**

    I hereby certify that on the 30th day of October, 2024, I served a true and correct copy of the foregoing document as follows:

<u>Via CM-ECF:</u>

Donald E. Smolen, II
Chris U. Brecht
*Attorneys for Plaintiff*

                                                             *Mark S. Rains*
                                                             Mark S. Rains